IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ROBIN BRYANT, } | |
| } | |
| Plaintiff, } | |
| } | CIVIL ACTION NO. |
| v. } | 07-AR-1407-S |
| } | |
| LIFE INSURANCE COMPANY OF } | |
| NORTH AMERICA, et al., } | |
| } | |
| Defendants. } | |

**MEMORANDUM OPINION**

Before the court is the motion of defendants[1], pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss counts III and IV of the complaint filed by plaintiff, Robin Bryant ("Bryant"), for failure to state a claim upon which relief can be granted. For the reasons that follow, defendants' motion will be granted in part and denied in part as to count III and granted as to count IV.

*Facts*[2]

While employed with McKesson as a material handler, Bryant was a participant in the Company's STD Plan and LTD Plan. The STD Plan was administered by LINA, and the LTD Plan was underwritten

---

[1] The Defendants are the Life Insurance Company of North America ("LINA"), the McKesson Corp. ("McKesson"), the McKesson Corporation Employees Long Term Disability Plan ("LTD Plan"), and the McKesson Corporation Employees Short Term Disability Plan ("STD Plan").

[2] The recitation of facts is based on the allegations contained in the complaint.

and/or insured by LINA. As a result of developing a variety of physical and emotional impairments, Bryant filed a claim for STD benefits. After she received a letter from LINA denying her claim, Bryant made a written request upon LINA to provide her with "a statement of policy or guidance with respect to the plan concerning the denied treatment option or benefit for the claimant's diagnosis, without regard to whether such advice or statement was relied upon in making the benefit determination." (Compl. ¶ 9.) As part of this request, Bryant asked for "all claim manuals and policy directives." *Id.* In response, LINA provided a copy of the claim file, but did not provide the claims manuals and policy directives.

Almost three months after her STD claim was denied, Bryant requested in writing all the forms necessary to file a claim for long term disability under the LTD Plan. After not receiving any response to her request for documents, Bryant submitted her own claim for LTD Plan benefits in connection with her appeal of the denial of her STD claim.[3] The claim and appeal were submitted to both LINA and McKesson. In response to her STD claim being denied again, Bryant requested a complete copy of her STD claim file and copies of the guidelines and procedures used to review the claim. Finally, after being informed for the third time that her STD

---

[3] Bryant finally received the LTD claim forms from LINA after she had already submitted her LTD claim as part of her STD appeal. Nevertheless, she filled out the forms and returned them to LINA.

claim had been denied, Bryant requested documents from LINA's associate medical directors and nurse case manager, as well as LINA's "Book of Knowledge." On June 25, 2007, LINA informed Bryant that it would not produce any guidelines, criteria, protocols, or other documents used to adjust her claims. However, LINA did supply Bryant with a partial copy of her claim file and informed her that it did not have any pending LTD claim in her name. Subsequently, Bryant provided LINA with copies of the two LTD Plan claims she had previously submitted. LINA has not yet made a decision regarding the LTD Plan claim.

    Bryant alleges that defendants failed to conduct a full and fair review of her claims for benefits. Specifically, she contends that defendants refused to consider the comments from co-workers and medical evidence she submitted as part of her claims submissions. She also asserts that defendants manifested bias and self-interest by: 1) indicating an unwillingness to communicate with her counsel even though a power-of-attorney and authorization had been submitted early in the claims process, 2)failing to provide information within the legally prescribed time limits, 3) failing to provide requested documents, 4) requesting information that she had already submitted, 5) crafting denial letters that were vague and conclusory, 6) back-dating letters so as to make it impossible for her to provide information by their deadlines, and 7) failing to submit evidence

to her before making a decision on her claim. Bryant claims to have exhausted all administrative remedies under both the plans. The present action was filed in this court on July 31, 2007.

In count III of her complaint, Bryant seeks to impose penalties under 29 U.S.C. § 1132(c)(1)(B) for defendants' refusal to provide the documents she requested. In count IV, Bryant seeks equitable relief under 29 U.S.C. § 1132(a)(3) in response to defendants' alleged breach of their fiduciary duties and failure to afford her a full and fair review, as required by 29 U.S.C. § 1133.

*Analysis*

### Count III (Penalties)

Defendants argue that count III of Bryant's compliant should be dismissed because the documents she requested during the claims review process are not covered by the penalty provisions of ERISA. Bryant, not surprisingly, contends, just as she does in count III, that defendants can be penalized for their failure to provide the requested documents. The resolution of this issue requires a careful analysis of ERISA's language, structure, and history.

There is no question that ERISA obligates a plan administrator to provide certain documents to beneficiaries upon written request. Specifically, 29 U.S.C. § 1024(b)(4) provides:

> The administrator shall, upon written request of any
> participant or beneficiary, furnish a copy of the

>  latest updated summary plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or **other instruments under which the plan is established or operated.**

(emphasis added). The controlling language in this case is the phrase "other instruments under which the plan is established or operated." Courts across the country have grappled with this phrase, and the majority position seems to be that the word "instrument" has a formal connotation.[4] In other words, not every scrap of paper is considered an "instrument." *See Allinder v. Inter-City Prods. Corp.*, 152 F.3d 544, 549 (6th Cir. 1998) ("instrument" is "properly limited to those class of documents which provide a plan participant with information concerning how the plan is operated"); *Bd. of Trs. of the CWA/ITU Negotiated Pension Plan v. Weinstein*, 107 F.3d 139, 142 (2nd Cir. 1997) (an "instrument" is "a document that sets out rights, duties, or obligations, or has some other legal effect"); *Faircloth v. Lundy Packing Co.*, 91 F.3d 648, 653 (4th Cir. 1996) ("instrument" is limited to the "formal or legal documents under which the plan is set up or managed"). While the Eleventh Circuit has yet to fully

---

[4] Black's Law Dictionary defines an "instrument" as "[a] written legal document that defines rights, duties, entitlements, or liabilities, such as a contract, will, promissory note, or share certificate." It goes on to note that "'[a]n 'instrument' seems to embrace contracts, deeds, statutes, wills, Orders in Council, orders, warrants, schemes, letters patent, rules, regulations, bye-laws, whether in writing or in print, or partly in both; in fact, any written or printed document that may have to be interpreted by the Courts.'" BLACK'S LAW DICTIONARY 813(8th Ed. 2004) (quoting Edward Beal, Cardinal Rules of Legal Interpretation 55 (A.E. Randall ed., 3d ed. 1924); *see also Faircloth v. Lundy Packing Co.*, 91 F.3d 648, 653 and 660 n.1 (4th Cir. 1996) (panel majority and dissenter engaging in battle of dictionaries over definition of "instrument").

tackle this issue, it has summarized § 1024(b)(4) as requiring plan administrators to "furnish, on written request, any information regarding the operation of the plan" and noted that "claims forms do not fall within the category of documents covered by § 1024." *Hamilton v. Allen-Bradley Co.*, 244 F.3d 819, 827 (11th Cir. 2001). The only guidance from the Supreme Court comes in the form of a parenthetical wherein it notes that § 1024(b)(4) requires plan administrators to "furnish beneficiaries with copies of *governing plan documents* for a reasonable copying charge." *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 84 (1995) (emphasis added).

While it is fair to say that "instrument" has a somewhat formal character, the precise scope of the word is ambiguous, and should be construed in light of the general obligation before ERISA decision-makers to give "full and fair" consideration. It is appropriate to look to the statute's legislative history as an interpretative aid. As the *en banc* Ninth Circuit pointed out in *Hughes Salaried Retirees Action Committee v. Administrator of Hughes Non-Bargaining Retirement Plan*, 72 F.3d 686, 690 (9th Cir. 1995), the legislative history suggests that "the documents contemplated by [§ 1024(b)(4)] are those that allow 'the individual participant [to] know[] exactly where he stands with respect to the plan–what benefits he may be entitled to, what circumstances may preclude him from obtaining benefits, what

procedures he must follow to obtain benefits, and who are the persons to whom the management and investment of his funds have been entrusted.'" (quoting S.Rep. No. 127, 93d Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.C.C.A.N. 4838, 4863). The same committee report quoted in *Hughes* also notes that disclosure should equip beneficiaries with enough information to allow them to "police their plans" and "enforce their own rights as well as the obligations owed by the fiduciary to the plan in general." *Id.* at 697 (Pregerson, J., dissenting). Put simply, the overriding purpose of ERISA's disclosure requirements is to ensure that "the individual participant knows exactly where he stands with respect to the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 118 (1989) (quoting H.R. Rep. No. 93-533, p.11 (1973), *reprinted in* 1974 U.S.C.C.A.N. 4649)).

   Bryant argues that the Department of Labor's ("DOL") interpretation of the statute at issue is entitled to deference. In *Blessitt v. Retirement Plan for Employees of Dixie Engine Co.*, 848 F.2d 1164, 1167 (11th Cir. 1988), the Eleventh Circuit observed that the interpretation of the administrative agencies charged with enforcing and interpreting ERISA (including the DOL) are due "great deference." The court should not "substitute its own construction of a statutory provision for a reasonable interpretation by the administrator of an agency." *Id.* at 1168 (*quoting Chevron U.S.A., Inc. v. Natural Resources Defense*

*Council, Inc.*, 467 U.S. 837, 843 n.11 and 844 (1984)); *see also Stern v. IBM*, 326 F.3d 1367, 1371-72 (11th Cir. 2003) (noting that DOL advisory opinions "carry considerable weight"). Here, the DOL has issued at least two advisory opinions interpreting § 1024(b)(4). In Advisory Opinion 96-14A, issued on July 31, 1996, the Agency defined an "instrument under which the plan is established or operated" as "any document or instrument that specifies procedures, formulas, methodologies, or schedules to be applied in determining or calculating a participant's or beneficiary's benefit entitlement under an employment benefit plan." The DOL reiterated its position in another advisory opinion two years later. *See* 1998 ERISA LEXIS 24 (August 6, 1998).

In seeking to define the scope of the documents covered by § 1024(b)(4), taking into account the language of the statute, its history, and the DOL's interpretation, the court follows the simple rule of statutory construction that "words grouped in a list should be given related meaning." *See Massachusetts v. Morash*, 490 U.S. 107, 114-15 (1989) (*quoting Schreiber v. Burlington Northern, Inc.*, 472 U.S. 1,8 (1985)). Applying this principle, the Ninth Circuit in *Hughes* reached the conclusion that "'other instruments under which the plan is established or operated' is limited to documents that are similar in nature to the documents specifically listed in [§ 1024(b)(4)]." 72 F.3d at

691. In other words, whether any particular document is covered by § 1024(b)(4) should be determined by the degree to which it is similar to the documents specifically listed in the statute (i.e., summary plan description, annual report, terminal report, bargaining agreement, trust agreement, or contract). This interpretation is consistent with the DOL's advisory opinions and seeks to provide appropriate disclosure to beneficiaries without placing an overly-onerous burden on plan administrators.

Applied to the facts of this case, this interpretation dictates that Bryant can seek penalties under 29 U.S.C. § 1132(c)(1)(B) for defendants' alleged failure to provide documents she claims to have requested. Specifically, she can seek penalties related to the following documents: 1) guidelines, procedures, directives, claims manuals and protocols used to review the file, 2) appeal procedures, and 3) the "Book of Knowledge." On the other hand, Bryant cannot seek penalties for defendants' alleged failure to produce: 1) forms and documents necessary to file a claim for long term disability benefits, 2) a complete copy of the STD claim file, 3) documents in the file from the associate medical directors and nurse care manager, and 4) all peer reviews. In short, Bryant can seek penalties related to "instruments" that explain the guidelines, procedures, and

protocols of the plans, as opposed to particular documents in her file that do nothing to explain how the plans are operated.[5]

Bryant also argues that she is entitled to recover penalties for defendants' alleged failure to provide documents covered under 29 C.F.R. § 2560.503-1(h)(2)(iii), which provides an expansive definition of documents and records that claimants are entitled to receive upon request in connection with their right to receive a "full and fair review" of their claims. However, this regulation specifically provides in its "scope and purpose" section that it was promulgated pursuant to 29 U.S.C. §§ 1133 and 1135. Therefore, there is no evidence that it was ever intended as an interpretation of § 1024(b)(4). Even if the regulation cannot be used to define "instrument," plaintiff argues that the penalty provision extends to the regulation because it was promulgated pursuant to a statute that is covered by the penalty provision.

Specifically, the penalty provision at issue, 29 U.S.C. § 1132(c)(1)(B), provides that "any administrator who fails or refuses to comply with a request for *any information* which such

---

[5] The court notes that the requirements for the information that must be contained in the summary plan description under 29 U.S.C. § 1022(b) include "the plan's requirements respecting eligibility for participation and benefits." The plan's guidelines, procedures, and protocols seem to be documents that define a beneficiary's "eligibility for participation and benefits." Therefore, the guidelines, procedures, and protocols fit within the category of documents that are specifically listed in § 1024(b)(4).

administrator is required by *this subchapter* to furnish to a participant or beneficiary" is subject to a penalty.[6] (emphasis added). Since the regulation was promulgated pursuant to statutes covered by "this subchapter," (i.e., §§ 1133 and 1135), plaintiff argues that § 1132(c) extends to the regulation. However, such a construction is not consistent with the rule that penalty statutes should be construed narrowly. *See Commissioner v. Acker*, 361 U.S. 87, 91 (1959). Under a strict construction of the statute, a beneficiary cannot seek penalties for a failure to provide documents under the regulation because the regulation is not included within "this subchapter." *See Doe v. Travelers Ins. Co.*, 167 F.3d 53, 60 (1st Cir. 1999) (expressing skepticism about interpreting § 1132(c) to reach the regulation); *Ferree v. LINA*, 2006 WL 2025012 at *5 (N.D. Ga. July 17, 2006) (declining to apply the penalty provision to the regulation). *But see Hamall-Desai v. Fortis Benefits Ins. Co.*, 370 F. Supp. 2d 1283,1312-13 (N.D. Ga. 2004) (awarding penalties for violations of the regulation).

It also bears noting that the penalty provision, § 1132(c), is directed at "administrators," while § 1133 (the statute under which the regulations are promulgated) and 29 C.F.R. § 2560.503-

---

[6] "The penalty under § 1132 is meant to be in the nature of punitive damages, designed more for the purpose of punishing the violator than compensating the participant or beneficiary." *Scott v. Suncoast Beverage Sales, Ltd.*, 295 F.3d 1223, 1231-32 (11th Cir. 2002); *see also Sandlin v. Iron Workers Dist. Council Pension Plan*, 716 F. Supp. 571, 574 (N.D. Ala. 1988), *aff'd*, 884 F.2d 585 (11th Cir. 1989).

1(h) (the relevant portion of the regulation) are directed at "the employee benefit plan." As pointed out by the Third Circuit in *Groves v. Modified Retirement Plan*, 803 F.2d 109, 116 (3rd Cir. 1986), "the terms 'plan administrator' and 'employee benefit plan' are terms of art under ERISA" and "refer to two entirely distinct actors." *Accord Vanderklok v. Provident Life & Accident Ins. Co.*, 956 F.2d 610, 618 (6th Cir. 1992); *Walter v. Int'l Ass'n of Machinists Pension Fund*, 949 F.2d 310, 315 (10th Cir. 1991). Therefore, given both the incongruities between the language of § 1132(c) and the regulation and the need to construe penalty provisions narrowly, the court declines to recognize a claim for penalties for failure to provide documents required by 29 C.F.R. § 2560.503-1.[7] Accordingly, Bryant can seek penalties from defendants[8] for their alleged failure to provide some of the

---

[7] As pointed out by Judge Duffey in *Brucks v. Coca-Cola Co.*, 391 F. Supp. 2d 1193, 1212 n.18 (N.D. Ga. 2005), this determination does not mean that plan administrators can violate the regulation and § 1133 with impunity, because "an administrator's failure to provide [requested] information may result in a determination that it did not accord the claimant a 'full and fair review,' and that its denial of the plaintiff's claim was therefore arbitrary and capricious." (citing *Doe*, 167 F.3d at 60-61). *See also Syed v. Hercules, Inc.*, 214 F.3d 155 162 (3rd Cir. 2000) ("[T]he remedy for a violation of [§ 1133] is to remand to the plan administrator so the claimant gets the benefit of a full and fair review.").

[8] While LINA argues that Count III should be dismissed with respect to it because it is not the "plan administrator," the court declines to do so at this early stage of the litigation. Plaintiff alleges that LINA functioned as a "de facto" plan administrator, which would allow it to be subject to penalties under § 1132(c) as recognized by the Eleventh Circuit in *Rosen v. TRW, Inc.*, 979 F.2d 191,193-94 (11th Cir. 1992). *See also Hamilton*, 244 F.3d at 824 ("Proof of who is the plan administrator may come from the plan document, but can also come from the factual circumstances surrounding the administration of the plan, even if these factual circumstances contradict the designation in the plan document.").

documents she requested; however, her claim survives to the extent it is rooted in the language of § 1024(b)(4) as explained above.

### *Count IV (Equitable Relief)*

In count IV of her complaint, Bryant seeks equitable relief under 29 U.S.C. § 1132(a)(3) for defendants' alleged failure to conduct a full and fair review of her claims for benefits. She specifically alleges that defendants' breached their fiduciary duty by refusing to consider the evidence that she submitted as part of her claims for benefits, rendering decisions without substantial evidence, and manifesting bias and self-interest. To remedy these alleged breaches, Bryant seeks the following relief: 1) a court order directing defendants to refer all further claim decisions to an independent third party administrator, 2) the removal of LINA as claim fiduciary and/or plan administrator, 3) attorney's fees, 4) a declaratory judgment that she is entitled to *de novo* review of her claim, 5) restitution, and 6) such other equitable relief as may be appropriate. Bryant is almost asking this court to amend ERISA to make it fit its nominal purpose.

Defendants argue that Bryant cannot seek equitable relief under § 1132(a)(3) because she has an adequate remedy under § 1132(a)(1)(B), upon which counts I and II of her complaint are predicated. This argument is agonizingly well-taken. According to the Eleventh Circuit's interpretation of *Varity v. Howe*, 516 U.S.

489 (1996), "an ERISA plaintiff with an adequate remedy under § 1132(a)(1)(B), cannot alternatively plead under § 1132(a)(3)." *See Katz v. Comprehensive Plan of Group Ins.*, 197 F.3d 1084, 1088 (11th Cir. 2000). "[I]f a plaintiff can pursue benefits under the plan pursuant to [§ 1132(a)(1)], there is an adequate remedy under the plan which bars a further remedy under [§ 1132(a)(3)]" *Ogden v. Blue Bell Creameries U.S.A., Inc.*, 348 F.3d 1284, 1287 (11th Cir. 2003)(*quoting Larocca v. Borden, Inc.*, 276 F.3d 22, 28 (1st Cir. 2002). The Eleventh Circuit has also noted that in evaluating whether an ERISA plaintiff can state a claim under § 1132(a)(3), the court should consider "whether the allegations supporting the [§ 1132(a)(3)] claim [are] also sufficient to state a cause of action under [§ 1132(a)(1)(B)], regardless of the relief sought, and irrespective of [plaintiff's] allegations supporting [her] other claims." *Jones v. American Gen. Life & Accident Ins. Co.*, 370 F.3d 1065, 1073 (11th Cir. 2004). In this case, inasmuch as Bryant can pursue benefits under § 1132(a)(1)(B) (as she does in counts I and II), and because the allegations supporting her § 1132(a)(3) claim are adequate to support an § 1132(a)(1)(B) claim, count IV of her complaint is due to be dismissed.

*Conclusion*

In accordance with the preceding discussion, defendants' motion to dismiss Counts III and IV will be granted in part and

denied in part as to count III and granted in whole as to count IV by separate order.

DONE this 2nd day of October, 2007.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE